. 265 P.2d 369

**SELLERS et al. v. ORONA.**

No. 5703.

Supreme Court of New Mexico.

Jan. 9, 1954.

W. T. O'Sullivan, Heister H. Drum, Albuquerque, for appellant.

George P. Seery, Belen, for appellees.

McGHEE, Chief Justice.

The defendant seeks the reversal of a judgment against him for $4,509.91 because of his breach of a contract to sell steers to the plaintiffs. Included in the judgment was an allowance for an $1,800 payment made at the time of the execution of the contract.

The plaintiffs had, as the defendant knew, bought the steers for resale, and within the time provided for delivery, to-wit, on No-

vember 5, 1951, the defendant had the steers with other cattle at Blain's Lake Scales, the appointed place for delivery, but refused to deliver them unless the plaintiffs increased the contract purchase price of 33½ cents per pound, or waived their right to cut back all diseased and unmerchantable cattle, plus a ten percent cut, and took all of the cattle there, which included a number of heifers and calves, whereas the plaintiffs had only contracted to purchase 180 steers. The plaintiffs offered to accept and pay for the steers according to the contract but refused to meet these demands and the defendant thereupon opened the gates to the corral where he had theretofore confined the cattle for a 12-hour shrink in accordance with the contract, and turned them loose.

The plaintiffs had contracted to sell the Orona steers to Arizona buyers for 37 cents per pound, with a delivery date of about November 1, 1951, and had represented them as weighing 475 to 600 pounds each, or an average of about 525 pounds. The Arizona buyers were also at the delivery point willing to take the steers in accordance with their contract.

The first ground urged to defeat the claim of the plaintiffs is that the price of cattle in the vicinity of the Orona ranch and the Blain's Lake Scales had declined from 33½ cents per pound at the date of the contract to 30 cents per pound on the date of the breach of the contract, and the trial court

so found. The defendant says the measure of damages in such case in New Mexico is the difference between the purchase price and the fair market value of the property contracted to be sold, as announced in Adams v. Cox, 1950, 54 N.M. 256, 221 P.2d 555, but the opinion says such is the rule in the absence of circumstances warranting recovery of ascertainable special damages. There was no claim there that the real and personal property were being purchased for resale.

In the case at bar, Orona, as the trial court found, was charged with notice his cattle were being purchased for resale, and we do not understand the defendant questions the finding. This, we think, is sufficient to bring the case within the exception to the general rule announced in Adams v. Cox, supra, and special damages may be allowed for the breach and the loss of profits, absent other conditions preventing a recovery. 46 Am.Jur., Sales, § 691, p. 818; Czarnikow-Rionda Co. v. Federal Sugar Ref. Co., 1930, 255 N.Y. 33, 173 N.E. 913, 88 A.L.R. 1426, and Annotation at 88 A.L.R. 1439 et seq. There is a masterly review of the authorities in this case, and it points out when special damages may and may not be recovered for breach of contract, where the seller knows the goods have been purchased for resale.

But, says the defendant, even if this be true, it was the duty of the plaintiffs to

go into the market and purchase other cattle with which to fill their contract with their vendees. Granting this contention is correct, still the burden was upon the defaulter to show such cattle were available for purchase and could have been obtained in time to meet their delivery dates, which were the same as the time Orona was to deliver. 46 Am.Jur., Sales, § 707, p. 831; Campfield v. Sauer, 6 Cir., 1911, 189 F. 576, 38 L.R.A.,N.S., 837; Paragould v. Arkansas Light & P. Co., 1926, 171 Ark. 86, 284 S.W. 529, 46 A.L.R. 1186. Upon this point the trial court found:

"14. * * * The time element considered as to dates of delivery, etc., it is not shown whether it would have been possible for the plaintiffs to have purchased other cattle in the open market to replace the Orona cattle for delivery under the Cowden contract, exhibit 3, notwithstanding the matter of range ethics involved as aforesaid."

It is clear from what has just been said that the defendant did not meet this burden.

The defendant also contends the plaintiffs should have paid him the increased price he demanded on delivery date, or should have taken all of his cattle, including the heifers and unmerchantable ones, delivered the steers to the Arizona buyers, sold the remainder at the best price obtainable, and then sued him for the loss, although he presented many more cattle and different classes than had been purchased. Under the contract the plaintiffs had bought only steers within a certain weight range, and had the right to reject all crippled, deformed, blind-eyed, locoed, lump-jawed or otherwise deformed animals, and were then entitled to cut ten percent of the remaining steers. We do not believe it would be just to require the plaintiffs, who were ready and anxious to comply with their contract, to take such hazard in order to save their voluntarily defaulting vendor from loss.

The defendant says a week after his default he offered to deliver the cattle or any part of them in accordance with the contract while other cattle were still being delivered by the plaintiffs to the Arizona buyers, and the plaintiffs refused to receive them. Such a finding was requested with the added statement the refusal was based on the fact the plaintiffs said their cattle trucks had returned to Arizona prior thereto. It is apparent the defendant waited too long to make the offer. The trial court refused to make the finding, and it is not urged under the point that such action was error; nor are we cited to any proof the Arizona buyers would then have received the steers.

The defendant also complains that on December 1st following, and after suit had been filed, he offered to return the $1,800 down payment, plus one-half of the

attorney's fees and costs, and such compromise was refused. We know of no rule which required the plaintiffs to accept, and they recovered considerably more in their judgment.

The judgment will be affirmed, and it is so ordered.

SADLER, COMPTON and SEYMOUR, JJ., concur.

LUJAN, J., not participating.